50 CCPA

**Application of Armand Jean Marie BONJIOVANIE.**

**Patent Appeal No. 6953.**

United States Court of Customs and Patent Appeals.

March 20, 1963.

Rehearing Denied May 16, 1963.

Linton & Linton, Washington, D.C. (Ulle C. Linton, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D.C. (Raymond E. Martin, Washington, D. C., of counsel), for Comr. of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 5 through 9, all of the remaining claims of appellant's application Serial No. 413,416, filed March 1, 1954, alleging certain new and useful improvements in "Epiderm Treating Product." The claims were rejected on the grounds of unpatentability over the prior art and for lack of utility.

The invention relates to a beauty cream composition and to a method for preparing same. Appellant states that an object of the invention is "an improved product for the treatment of the epiderm and which actually does exert on the skin tissues a rejuvenating action, even when used in very small quantities." Another stated object is a cosmetic "of any kind containing any proportion of royal jelly." It is stated that the "product may be incorporated to any type of composition used externally, such as an emulsion or a solution forming a dry or fat cream, a lotion, a jelly, a powder, a lipstick or the like"; that the desired effects "are to make the wrinkles disappear, the skin become firmer"; that royal bees jelly "shows extraordinary rejuvenating properties;" that "the proportion of royal jelly with reference to the sum of the other components may range advantageously between 1:10 and 1:10,000"; and that "Generally speaking, excellent results are obtained with a proportion of about 0.05%."

Claims 8 and 9 are representative and read as follows:

"8. A method for preparing a composition for rejuvenating skin and removing wrinkles therefrom consisting in preparing a cosmetic carrier base and incorporating in said base, at a maximum temperature of 40° C. a small amount of whole royal bees jelly.

"9. A composition for rejuvenating the epidermis and making the same firmer comprising a cosmetic carrier base and between about 0.1 and 0.001% by weight of whole royal bees jelly intermixed in said base."

The references of record relied on by the examiner and the board are:

Berndt (France) 906,701 May 28, 1945

Krumml, German application 30th 2/04K 11714, published October 2, 1952

Rubinstein (France) 1,054,555 October 7, 1953

DeNavarre, "The Chemistry of Manufacture of Cosmetics," 1941, pp. 655–659.

Technique of Beauty Products, 1949, pp. 163–167.

Modern Drug Ency. & Therapeutic Index, 1949, 4th Ed., p. 932.

Root, "ABC and XYZ of Bee Culture," 1947, pp. 567, 569.

In addition, the examiner and the board cited as "References added for their teaching":

Statement of Arthur S. Flemming, Secretary of Health, Education and Welfare, at News Conference on Tuesday, November 18, 1958, pp. 1–5.

Recent Enforcement Actions in Federal Courts Involving Food Supplements, HEW, Food and Drug Administration, November 18, 1959, pp. 1–5.

An analysis of the prior art references, insofar as material to the issues, shows:

Berndt teaches a process in which "the nutritive juice or alimentary paste of bees is added to the cream base products." The paste or juice is fed to the larvae so that they need not provide food for themselves. This juice "has a particularly high hormone and vitamin content." By adding "up to 10% hormone-containing nutritive juice" to a cosmetic, it is asserted that the invention "makes it possible to utilize in another manner the bee products that have hitherto served exclusively for the propagation of bees."

Krumml discloses an ointment for external application for the cure of suppurative wounds which contains a "cephalic gland secretion" produced by worker bees for feeding to "young bees, and which particularly promotes the development of the queen bee from egg to puberty." The "hormone-containing nutritive juice" may be processed and used in ointments, emulsions and tonics.

Rubinstein relates to ultilization of flower pollen, gathered by bees in the preparation of cosmetic products. It is disclosed that "royal jelly" can be utilized as one of the components of cosmetic cream.

DeNavarre, in discussing "Facial Creams" and the claims made as to their effect on "wrinkles and lines of the face and neck," teaches that to claim that "a cream, or other preparation, will *eliminate* or *remove* wrinkles * * * *is* misleading," and that they "may impart a transitory feeling of smoothness" as a result of the massaging action but not from the cream per se. The author notes that no value should be attributed to a cosmetic product because of its vitamin content and that reference to glandular extracts or hormones makes no valuable contribution to the product as a cosmetic.

Technique of Beauty Products discloses the use of vitamins and hormones in cosmetics.

Root, in his discussion of "Royal Jelly and Development of the Worker and the Queen Honeybee," states that during their early stages of development all larvae of honeybees receive a special food described as royal jelly, which is "elaborated in the pharyngeal glands located in the heads of the bees" and that royal jelly contains vitamins and hormones. It is also stated that, "Latest investigations indicate that the production of either a worker or a queen is due not to the change of food but to the amount of nutrients consumed by the queen and worker. larvae."

Modern Drug Encyclopedia and Therapeutic Index describes a vitamin A and D ointment topically applied for its emollient and tissue stimulating action.

The relevant portion of the Flemming statement is as follows:

"For bees, royal jelly is indeed a miracle food, but it has no practical value for humans as a food, drug, or cosmetic. The claims made for it are groundless."

"Recent Enforcement Actions in Federal Courts Involving Food Supplements," November 18, 1958, catalogs a number of products containing royal jelly which have been condemned for misrepresentation.

In support of his application for a patent on the claimed composition, the appellant introduced the affidavit of Dr. Philippe Decourt, formerly interne in Paris hospitals and former chief of the clinic at the Faculty of Medicine of Paris, and the affidavit of Dr. Santiago Nogues More, a Spanish physician and specialist in Dermatology and Cutaneous Aesthetics. These affidavits will hereinafter be referred to as Decourt and More and considered in the light of their relevancy to the issues involved.

The board sustained the examiner's rejection of all claims as lacking invention over Berndt or Krumml either alone or in view of Rubinstein, DeNavarre, Technique of Beauty Products, Modern Drug and Root.

The board also sustained the examiner's rejection of the claims for lack of utility "in absence of convincing evidence that the composition is effective and reliable for the intended use and will accomplish the rejuvenation alleged."

Both the examiner and the board first addressed consideration to the issue relating to the patentability of appellant's claimed invention over the prior art. A resolution of this issue by us adverse to the contentions of the appellant would obviate the necessity of a discussion of and pronouncement on the remaining issue. In argument before us and in his brief, the solicitor reversed this order of presentation of the issues. We prefer to consider first the rejection of the claims based on the prior art.

It is pertinent here to point out that appellant clearly predicates his claim to the patentability of his compositions solely on the ingredient "royal jelly" as the critical component thereof. It is the alleged discovery of the wholesome properties and contributory effects of royal jelly as a component of any conventional cosmetic or cream base which constitutes his invention. Appellant asserts that it is royal bees jelly which shows the extraordinary properties claimed; that his invention has for its object "an application of this jelly" to the production of cosmetics; and that it may be "incorporated to any type of composition used externally." Appellant has not undertaken to show that his claimed proportions of royal jelly are in fact critical. Appellant rather negates criticality of proportion by his reference to "cosmetics of any kind containing any proportion of royal jelly."

The record sustains the conclusion of the examiner that:

"* * * The various materials included with the royal jelly compositions are conventional cosmetic materials and no discussion thereon is considered pertinent to the issues of this case."

We also agree with the observation of the board that:

"* * * We do not understand appellant to be predicating patentability on the other components (cream base) of his composition."

It follows, therefore, that with respect to this ground of rejection, the issue is whether it was obvious in view of the prior art to incorporate any amount of royal bees jelly in cosmetic compositions.

It is noted that while the board sustained the examiner in rejecting the claims as lacking invention over Berndt or Krumml either alone or in view of Rubinstein, DeNavarre, Technique of Beauty Products, Modern Drug and Root, the board placed particular emphasis on the prior art efficacy of the teaching of Rubinstein combined with that of either Berndt or Krumml, holding that:

"* * * The primary references are asserted by the Examiner to show royal jelly in salves or cosmetics *and there can hardly be any question that Rubinstein discloses "the royal jelly" of bees in cosmetics even though no specific formulation is given.* The Examiner employed Root to show that the bee food is the same for the worker and the queen, hence the bee food or secretions disclosed by Berndt and Krumml must of necessity have been the same as that popularly termed 'royal jelly.'" (Emphasis ours.)

As hereinabove noted, the Rubinstein cosmetic as described in that reference relates to the utilization of flower pollen gathered by bees. Rubinstein states that:

"Said pollen is extracted from the beehive before it has been definitely transformed into honey; *material designated as 'royal jelly', which is another product of the beehive, very rich in active substances, can also be utilized.*" (Italics ours.)

Appellant, by bland assertion, seeks to deprecate the teaching of Rubinstein that royal jelly and pollen are both bee-

hive products and that either or both may be utilized as a component of the cosmetic composition. Appellant claims that his "improved product" is for treatment of the epiderm exerting a rejuvenating action on the skin tissues and that its use is not inconsistent with the presence of "hormones, vitamins, fruit juices and the like." The parallel with the art as disclosed by Rubinstein affords cogent similarity in that the reference teaches that royal jelly contains "active substances" capable of being absorbed by the epidermis.

As hereinabove noted, Berndt discloses the nutritional juice or alimentary paste of bees which is added to a cream base product. This paste or juice is fed to the larvae and is asserted to possess a high hormone and vitamin content and that the invention makes it possible to utilize "the bee products that have hitherto served exclusively for the propagation of bees."

Appellant contends, without substantiating proof, that the nutrient food or alimentary paste of Berndt is not royal jelly in that it is derived from the stomach of bees and not from the pharyngeal glands. Appellant further contends that Berndt's proportions of alimentary paste, e. g., 10% and 9.6%, are wholly different from the proportions used by appellant.

With reference to the matter of proportions, the record supports the finding of the examiner that:

"* * * Thus, there appears to be no conclusive evidence that .1 to 0.0001% of the royal jelly is a critical matter upon which patentability can be predicated. Further applicant in the specification, pages 3 and 6 states that a 1:10 proportion may be used. Thus, applicant shows that he may also use a 10% royal jelly composition as that of Berndt."

In this connection it is pertinent to point out that appellant clearly allays any suggestion of criticality of proportions when he states in his specification that the cosmetic may contain "any proportion of royal jelly" and that the contents of royal jelly to be incorporated "may vary within comparatively wide limits."

In our opinion, reference to Root supports the conclusion that the nutrient food or alimentary paste of Berndt is none other than the substance characterized by the term "royal jelly." It is a beehive product serving the same purpose in bee culture and sustenance as well as the same purpose in the field of cosmetics as that disclosed by appellant's specification. Root deals specifically with "Royal Jelly and Development of the Worker and the Queen Honeybee," disclosing a paste-like substance, a larvae food, "elaborated in the pharyngeal glands located in the heads of bees" to be consumed by the queen and worker bee and which contains hormones. Root further discloses that the alimentary canal in the anatomy of the bee extends through the entire body and that "the first part above the mouth in the head is widened to form the pharynx." Root would teach one skilled in the art that royal jelly is included in the alimentary juice or paste of Berndt since the pharynx forms a part of the bee's alimentary canal.

We are of the opinion that a detailed discussion of the remainder of the references cited as pertinent to and supportive of the rejection based on prior art would serve no useful purpose. It would suffice to say that these references are relevant and support the findings of the examiner and the decision of the board.

In our opinion, Rubinstein alone clearly embraces the use of royal jelly in a cosmetic composition and would suggest such use to one skilled in the art.

We are also of the opinion that Berndt in view of Root would render obvious to one skilled in the art to incorporate royal bees jelly in a beauty cream or cosmetic. It would involve redundancy to pyramid other cited pertinent references. We are convinced that the claims are unpatentable over the prior art discussed above.

In view of our conclusions as above noted, we do not reach the issue raised by the rejection of the claims based on lack of utility.

We affirm the decision of the Board of Appeals.

Affirmed.